[Crim. No. 1304. In Bank.—April 13, 1909.]

Ex Parte JOHN C. BAILEY, on Habeas Corpus.

HABEAS CORPUS—VOID MUNICIPAL ORDINANCE—REGULATION OF FISHERIES IN PACIFIC OCEAN.—A municipal ordinance of the town of Santa Monica, making it a misdemeanor for any person to set, draw, or use any fishing net or seine in the Pacific Ocean at any point or place within said town less than one thousand feet from any wharf, dock, or pier located in said town, for the purpose of protecting fishers with hooks and lines fishing thereon, is void as being beyond the power of the town to enact, and one who is held for a misdemeanor in violation of such ordinance, is entitled to be discharged upon writ of *habeas corpus.*

ID.—TITLE TO WILD GAME AND FISH IN PEOPLE OF STATE.—The ownership of wild game, not reduced to actual possession by private parties, of which the fish in our waters constitute a part, is in the people of the state in their collective sovereign capacity.

ID.—ABSENCE OF PROPRIETARY INTEREST IN TOWN.—The people of the town of Santa Monica have no such proprietary interest in the fish swimming in the Pacific Ocean within the corporate limits of the town, as authorizes them to protect and preserve them therein, simply that they may be taken by those fishing from its wharves.

Id,—Ordinance not Designed to Protect Navigation.—It is manifest that the ordinance was not designed to protect navigation and that the absolute prohibition of any kind of fishing-net or seine within a thousand feet of each and all the wharves, docks, and piers in the town of Santa Monica could not have been considered essential to easy or convenient access thereto by vessels.

Id.—Common Right of Fishery ·Subject to Navigation.—While the common right of fishery in any public waters must give way to the right of navigation, so far as is necessary for the fair, useful, and legitimate exercise of the latter right, it cannot be unnecessarily and unreasonably impeded thereby.

PETITION for Writ of Habeas Corpus to W. K. Barretto, Marshal of the town of Santa Monica.

The facts are stated in the opinion of the court.

W. H. Savage, and M. C. Hester, for Petitioner.

Towser, Taft & Odell, for Respondent.

ANGELLOTTI, J.—At the time of the issuance of the writ herein, the petitioner was in custody under a judgment pronounced upon his conviction of a violation of the provisions of an ordinance of the town of Santa Monica, adopted November 19, 1900. His claim was that the ordinance is void. His application was pending unsubmitted at the time of the fire of April 18-20, 1906, and the record was destroyed. It is only within the last few weeks that the record has been restored, and the matter submitted for decision.

The ordinance in question is as follows:

"Ordinance · 346. An ordinance regulating seining in certain portions of the town of Santa Monica.

"The board of trustees of the town of Santa Monica do ordain as follows:—

"Section 1. It shall be and is hereby made unlawful for any person to set, draw or use any fishing net or seine in the Pacific Ocean at any point or place within said town less than one thousand feet from any wharf, dock or pier located in said town.

"Section 2. Any person violating section 1 of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction by any court of competent jurisdiction, shall be

fined in a sum not exceeding fifty dollars, or be imprisoned in the town jail, for not more than thirty days, or both, at the discretion of the trial court."

We think it is manifest from the terms of the ordinance that it was in no sense designed for the preservation and protection of fish for the benefit of the people of the state, as are the laws enacted by the state legislature in that behalf to be found in title XV of the Penal Code, and it will therefore be unnecessary to consider the claim that a municipality in the exercise of the police power may enact such regulations for the protection of wild game within its borders as may not be in conflict with general laws of the state. We do not desire to be understood, however, as suggesting that a municipality has any such power.

It is unnecessary to decide this point, for such manifestly was not the purpose of the ordinance. The prohibition against the use of fishing nets and seines extends only to places "less than one thousand feet from any wharf, dock or pier located in said town." The presence of a wharf, dock, or pier is the material thing, and it was clearly the sole object of the ordinance to protect and add to the piscatorial advantages of the wharves, docks, and piers in the town.

The ordinance conveys the idea that the object was to make such wharves, etc., advantageous for fishing with hook and line, the idea being that more fish could be thus taken by those fishing therefrom if seining and netting were prohibited within a thousand feet. If this was the object of the ordinance, and it appears clear to us that this is the only object that can reasonably be inferred from the language used, it was clearly beyond the power of the town to enact. Nothing is better settled than the doctrine that the ownership of wild game, not reduced to actual possession by private parties, of which the fish in our waters constitute a part, is in the people of the state in their collective sovereign capacity. (*People* v. *Truckee etc. Co.*, 116 Cal. 397, [58 Am. St. Rep. 183, 48 Pac. 374].) The people of the town of Santa Monica have no such proprietary interest in the fish swimming in the waters of the Pacific Ocean within the corporate limits of the town, as authorizes them to protect and preserve them therein, simply that they may be taken by those fishing from the wharves. Until actually reduced to possession, the fish belong to all the people of the state

in common, and those engaged in the exercise of the common
right to take them from what is a public highway, open to all
people alike, cannot be impeded in the slightest degree in the
exercise of that right solely for the purpose of making the
wharves, etc., of the town a more advantageous place from
which to fish.  To allow this would practically amount to a
segregation of a portion of the fish at large in the ocean to
the uses of the town of Santa Monica, to the injury of persons
otherwise entitled to take them in such manner as they saw
fit.  Such legislation could be sustained only on the theory
that Santa Monica has some sort of a proprietary interest in
the fish in that part of the ocean which is within the corporate
limits of the town, but, as we have seen, such a theory has no
foundation in fact.  It is said by counsel for respondent that
it has been held that the right of the riparian owner to take
fish from the water on or fronting on his land is exclusive,
but this is too broad a statement of the rule.  The ruling in
*People* v. *Truckee etc. Co.*, 116 Cal. 397, [58 Am. St. Rep. 183,
48 Pac. 374], cited by him, was simply that "the right of
fishery *upon his own land* is exclusively in the riparian pro-
prietor."  The rule is stated in 2 Farnham on Waters and
Water-Rights, section 375, as follows:  "An exclusive right
of fishery in the water adjacent to property is not one of the
rights of the riparian owner.  He can claim such right only
when he owns the soil under the water, or the right has been
expressly conferred upon him.  By reason of the location of
the riparian owner and his exclusive right to use his land in
connection with the fishery, he has certain advantages not
common to the public, and in some cases this will give him
a virtual monopoly of the fishery; but the fact that he has the
exclusive right to draw a seine on his property does not ex-
clude the public from the right to draw seines if they can do
so without trespassing on the shore."  Again, in section 401,
with relation to municipalities, it is said:  "But except in
private waters of which the municipality has the title, it has,
in the absence of statute or custom, no title to or exclusive
control over, the fisheries within its limits."

It is said that there is nothing before this court to show
that it is not a necessary provision "for the proper conduct
of traffic upon and about the wharves, that seining should be
excluded within the limit provided by the ordinance."  Except

in so far as it might operate to reduce the number of fish available to those fishing from the wharves, a matter entirely beyond the control of the town, learned counsel has not suggested, and it is impossible to conceive, how the acts prohibited by the ordinance could impede in the slightest degree anything that it was desired to do on the wharves. The only other theory that has occurred to us upon which it might be claimed that the ordinance was a valid exercise of power on the part of the trustees of the town was that it was in aid of navigation in the vicinity of the wharves, docks, and piers, and to enable vessels to conveniently and safely reach the same. This claim, however, is not made, and manifestly the ordinance was not designed for any such purpose. The absolute prohibition of any use of any kind of fishing-net or seine within a thousand feet of each and all of the wharves, docks, and piers in the town of Santa Monica could not have been considered essential to easy and convenient access thereto by vessels. While the common right of fishery in any public water must give way to the right of navigation so far as is necessary for the fair, useful, and legitimate exercise of the latter right, it cannot be unnecessarily and unreasonably impeded thereby. (Farnham on Waters and Water-Rights, sections 33a and 393.) We can see no ground upon which the ordinance in question can be sustained. It is an interference with the common right of fishery not warranted in the lawful exercise of the police power.

It is ordered that the petitioner be discharged from custody.

Shaw, J., Sloss, J., Henshaw, J., Melvin, J., and Lorigan, J., concurred.