[L. A. No. 7669. In Bank.—June 5, 1924.]

# THE PEOPLE, Respondent, v. STAFFORD PACKING COMPANY (a Corporation), Appellant.

[1] Fish and Game—Act to Conserve Fish Supply (Stats. 1919, Pages 1204, 1205)—Use of Fish for Reduction Purposes—Permit by Fish and Game Commission— Construction of Act and Permit.—The act to conserve the fish supply in this state (Stats. 1919, pp. 1204, 1205) makes it unlawful to use any food fish except fish offal for reduction purposes except pursuant to and within the limits of a permit issued by the Fish and Game Commission. The provision in the statute that the Fish and Game Commission may "issue a permit granting the privilege to use in a reduction plant during a calendar month an amount of said fish not to exceed twenty-five per cent of the amount any such person or firm can pack or preserve for human food during a calendar month," fixes a maximum which governs the commission in the issuance of its permit; and the maximum which governs the packer is the quantity named in the permit granted by the commission, which may not in any event exceed the maximum set by the statute, but which may be fixed at any less quantity which the commission may prescribe. The use, therefore, of any food fish in a reduction plant is unlawful except to the extent that it is authorized within the terms of such a permit.

[2] Id. — Excessive Reduction of Fish — Injunction — Pleading — Evidence—Continuance of Violations.—Where a complaint by the state, seeking to restrain a packing company from using, in a reduction plant for the manufacture of fish meal, fish oil and fertilizer, more than twenty-five per cent of the total amount of sardines received at its packing or canning plant during a calendar month (the permit from the Fish and Game Commission to said packing company allowing a maximum use of not to exceed twenty-five per cent), alleges that throughout the month preceding the filing of the complaint the defendant used in its reduction plant 88.6 per cent of all the sardines received by it during that month, and such allegation is nowhere denied, this evidences a willful and deliberate violation of the law on the part of the defendant and justifies the conclusion that it was done pursuant to a policy adopted by the defendant which the latter would continue to follow unless restrained.

[3] Id. — Irreparable Injury — Remedies — Pleading — Evidence.— Facts alleged in a complaint by the state showing that the defendant has committed a violation of the act to conserve the fish supply (Stats. 1919, pp. 1204, 1205) and of a permit issued by the Fish and Game Commission to defendant allowing the latter to

use in its reduction plant a stated percentage of sardines received by it during a calendar month, and that unless restrained defendant will continue to commit such violations, and the proof of such facts, are sufficient to support, *prima facie,* the conclusions that irreparable injury is threatened and that the remedy at law is inadequate.

[4] ID.—TITLE TO FISH—REGULATIONS.—The general right and ownership of fish is in the people of the state and the state has the right to regulate and control the taking and disposition thereof.

[5] ID.—EXCESSIVE CONVERSION OF FISH INTO FISH MEAL, ETC.—NUISANCE—INJUNCTION—EQUITY.—The conversion of fish into fish meal, fish oil, and fertilizer, in violation of the law and of a permit issued by the Fish and Game Commission, may be enjoined in an action in equity as a nuisance upon the ground that it constitutes "an obstruction to the free use of property."

[6] ID.—ADEQUACY OF REMEDY—QUESTION OF FACT—APPEAL.—The question whether or not a given remedy at law is adequate is, in the first instance, a question of fact for the trial court, and even where the evidence is unconflicting, if opposing inferences may be reasonably drawn therefrom, it still remains a question of fact in the first instance. The finding and conclusion of the trial court thereon will not be disturbed upon appeal, therefore, unless it is shown that the evidence is legally insufficient to support the same.

[7] ID.—INJUNCTION—ADEQUACY OF REMEDY AFFORDED BY STATUTES—CONCLUSION OF TRIAL JUDGE—APPEAL.—In this action by the state to restrain a packing company from using fish for conversion into fish meal, fish oil, and fertilizer, in violation of the law and of a permit issued by the Fish and Game Commission, the conclusion of the trial judge that the power of said commission after a hearing to suspend for a period not exceeding ninety days the license of a packer found guilty of violating its permit, in conjunction with the provisions of a statute (Stats. 1917, p. 1275) making it a misdemeanor to engage in the business of packing fish without first procuring a license therefor, does not afford an adequate remedy cannot and should not be disturbed on appeal.

[8] ID.—DECREE GRANTING INJUNCTION—SCOPE AND EFFECT OF.—The decree in such action restraining the defendant from using, in its reduction plant for the manufacture of fish meal, fish oil, and fertilizer, more than twenty-five per cent of all sardines received by it while actually engaged in the canning, packing, and preserving of sardines for human consumption, did not have, and could not have had, the binding effect of law as a rule governing the action of anyone other than the parties to such action, the trial

4.  State ownership of fish and game, notes, **Ann. Cas.** 1917B, 949, 978, 980.

court being not at all concerned with the unlawfulness of the acts of the defendant but only with their wrongfulness as an invasion of the property rights of the people; and having determined that the acts complained of constituted a wrongful invasion of those property rights and having further determined that the threatened continuance thereof would work irreparable injury for which there was no adequate remedy at law, there was a complete foundation for equitable interposition and equitable relief.

APPEAL from an order of the Superior Court of Los Angeles County granting an injunction *pendente lite*. John M. York, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. A. Alderson for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Robert D. Duke for Respondent.

MYERS, J.—The defendant corporation, which is engaged in the business of canning, packing, and preserving fish, appeals herein from an order granting an injunction *pendente lite* restraining the defendant from using, in a reduction plant for the manufacture of fish meal, fish oil, and fertilizer, more than twenty-five per cent of all sardines received by it while actually engaged in the canning, packing, and preserving of sardines for human consumption. Sections 4 and 6 of an act to conserve the fish supply in California, etc. (Stats. 1919, pp. 1204, 1205), provide in effect that no person or firm engaged in the business of packing fish shall suffer or permit any preventable deterioration or waste of any fish caught or taken within or without the waters of this state and brought into this state, or shall divert fish or other fishery products for reduction purposes without first having written permission from the Fish and Game Commission, and that no reduction plant shall receive any fish without such written permission. It is further provided that if such person or firm is found guilty of violating such permit the board of fish and game commissioners may, after a hearing, suspend for a period not to exceed ninety days any such license which shall have been so issued by it. Section 5 of said act as amended (Stats. 1921, p. 459) provides that no

193 Cal.—46

such person or firm shall receive or accept more food fish than its plant can pack or preserve fit for human consumption. It also forbids the use of fish fit for human consumption for reduction purposes, provided that the Fish and Game Commission may, after a hearing, upon application therefor, issue a permit granting the privilege to use in a reduction plant during a calendar month an amount of said fish not to exceed twenty-five per cent of the amount any such person or firm can pack or preserve for human food during a calendar month.

It is alleged in the complaint herein that the defendant, upon its application and after a hearing, was granted such a permit to use sardines for the manufacture of fish oil, fish meal, or fertilizer, during the time it is packing sardines for human food purposes only, provided that the amount so used must not exceed twenty-five per cent of the total amount of sardines received at the packing or canning plant of defendant during a calendar month. It is also alleged that continuously during the month of January, 1923, the defendant used fresh sardines fit for canning and preserving purposes for human consumption in its reduction plant in excess of the amount allowable under its permit and in violation of the provisions of law above referred to. It is further alleged that said defendant threatens to continue the use of sardines fit for human consumption in its reduction plant in violation of said order of the commission and in violation of said laws, "thereby causing great and irrevocable loss and damage to the people of the State of California" and "that there is no speedy and adequate remedy at law." "That said defendant has used said sardines in its reduction plant in the manufacture of fish meal, fish oil and fertilizer in violation of the laws of the State of California and said orders of the Board of Fish and Game Commissioners referred to herein and threatens to continue to commit said wrongful act unless restrained by this honorable court." The defendant in its answer admits, by failing to deny them, all of the facts alleged in the complaint except that it denied "that it *threatens* or ever *threatened* to continue to use fresh sardines" in its reduction plant as alleged in the complaint. There is no allegation, however, that it does not *intend* to continue such use of sardines, and

it does not allege that it will not continue such use if not restrained by injunction.

Plaintiff supported its application for a provisional injunction by affidavits showing that during the month of January defendant had converted 88.6 per cent of all the sardines received by it into fish meal and fish oil. Defendant filed counter-affidavits in opposition thereto, the allegations of which amount to nothing more than this: "That the defendant "has never in any way or by any act *threatened* and does not now *threaten* to violate any law of the State of California or any order or permit made or issued to it by the Fish and Game Commission of California," and that no "officer, employee or person connected with said corporation has ever made any such *threat.*"

Appellant contends that the order appealed from is in excess of the equity jurisdiction of the court, and that, conceding such jurisdiction, the complaint and evidence were both insufficient to justify its exercise herein. In support of the latter contention appellant argues that neither the complaint nor the evidence shows a violation on its part of the state law for the reason that the limitation placed thereby upon the quantity of fish which may be used for reduction purposes is "twenty-five per cent of the amount any such applicant, person, firm or corporation can can or pack or preserve for human food during a calendar month." Appellant contends that this means twenty-five per cent of the maximum capacity of its packing plant. It is not necessary to here determine whether the quoted phrase means that the percentage is to be based upon the theoretical capacity of the packing plant or upon the quantity of fish actually canned, packed or preserved by it during the month in question. Assuming the correctness of appellant's interpretation of this phrase, the fact still remains that the allegations of the complaint and affidavits do charge facts amounting to a violation both of the law and of the permit issued by the commission. [1] The statute makes it unlawful to use any food fish except fish offal for reduction purposes except pursuant to and within the limits of a permit issued by the commission. The twenty-five per cent mentioned in the statute is the maximum which governs the commission in the issuance of its permit. The maximum which governs the packer is the quantity named in the permit granted by

the commission, which may not in any event exceed the maximum set by the statute, but which may be fixed at any less quantity which the commission may prescribe. It is immaterial that the law as interpreted by petitioner would have authorized the commission to issue a permit to the appellant for the use of a larger percentage of fish in its reduction plant. The commission did not do so, and under the law the use of any food fish in a reduction plant is unlawful except to the extent that it is authorized within the terms of such a permit.

Appellant asserts that an injunction will not issue to prevent the doing of an act which has already been committed, and that the allegation that defendant threatens to continue the doing of the act complained of it is a mere conclusion of the pleader and insufficient as an allegation of fact. These propositions may be conceded. [2] The complaint was filed herein February 14, 1923, and it is alleged therein, and nowhere denied, that throughout the preceding month, January, the defendant used in its reduction plant 88.6 per cent of all the sardines received by it during that month. This evidences a willful and deliberate violation of the law on the part of the defendant and justifies the conclusion that it was done pursuant to a policy adopted by the defendant which the latter would continue to follow unless restrained. It may be conceded, also, that the allegation that "there is no speedy and adequate remedy at law" is a mere conclusion insufficient to entitle plaintiff to the interposition of equity in the absence of the allegation of facts from which such a conclusion would reasonably follow. The necessity and importance of conserving the wild game and fish of this state for the benefit of the people of the state have been recognized by this court for the past thirty years (*Ex parte Maier*, 103 Cal. 476 [42 Am. St. Rep. 129, 37 Pac. 402]). This is the expressed purpose of the statute hereinabove cited. It was shown herein and is not denied by appellant that it received during that month of January 681,623 pounds of fresh sardines fit for canning and preserving purposes and that it preserved for human consumption less than twelve per cent thereof. It requires no argument to show that the millions of fish thus destroyed are no longer available to furnish a food supply to the people of the state or to replenish their own species. If this defend-

ant may thus violate the law with impunity, every other packer may do likewise and would naturally be tempted to do so. Appellant asks us to take judicial notice of the fact that the supply of fish in the Pacific Ocean is inexhaustible. If we are authorized to take judicial cognizance upon this subject, we should have to conclude that experience has proven that the available supply of food fish in the ocean in waters *readily accessible* to the packing plants of the state may be seriously depleted, if not practically exhausted, within a period of a few years by unrestricted fishing. **[3]** We are satisfied that the facts alleged and proved herein sufficiently support, *prima facie,* the conclusions that irreparable injury is threatened and that the remedy at law is inadequate. Another point bearing upon this latter conclusion will be hereinafter discussed.

Appellant's principal contention is that the state cannot maintain an action in equity for the purpose of obtaining an injunction to prevent the violation of law, except when expressly authorized thereto by statute, and that the sole exception to this rule is where an act sought to be abated or prevented is a public nuisance which affects the health, morals or safety of the people. Appellant cites a large number of decisions from the courts of other states in support of this contention, but it is not necessary to review them here for the reason that our own courts have spoken definitely upon this question. **[4]** Appellant concedes that the general right and ownership of fish is in the people of the state and that the state has the right to regulate and control the taking and disposition thereof. (Const., art. I, sec. 25; art. IV, sec. 25½; *Ex parte Maier,* 103 Cal. 476 [42 Am. St. Rep. 129, 37 Pac. 402]; *People* v. *Truckee Lumber Co.,* 116 Cal. 397 [58 Am. St. Rep. 183, 39 L. R. A. 581, 48 Pac. 374]; *Ex parte Bailey,* 155 Cal. 472 [132 Am. St. Rep. 95, 31 L. R. A. (N. S.) 534, 101 Pac. 441]; *Ex parte Phoedovius,* 177 Cal. 238 [170 Pac. 412]; *In re Parra,* 24 Cal. App. 339 [141 Pac. 393].) Appellant also concedes that an action to abate a nuisance will not be defeated merely because the act sought to be enjoined is a crime, but appellant insists that an action will not lie to abate or prevent what is charged or alleged to be a nuisance "unless it be a nuisance in itself—as the books put it, a nuisance *per se*." **[5]** Appellant defines a nuisance *per se* as "an act which in

itself is not only a violation of law, but which produces results affecting the health, morals, comfort or peace of the people.'' The use of fresh fish for conversion into necessary commodities such as fish meal, fish oil, and fertilizer, not being such a nuisance *per se*, the conclusion follows that this action will not lie. The fallacy in this argument rests in the restricted definition adopted by appellant. A nuisance is ''anything which is injurious to health, or is indecent or offensive to the senses, *or an obstruction to the free use of property*, so as to interfere with the comfortable enjoyment of life or property . . . '' (Civ. Code, sec. 3479; Pen. Code, sec. 370.) (Italics added.) This point was determined adversely to appellant's contention in *People* v. *Truckee Lumber Co., supra.* That was an action in the name of the people on the information of the attorney-general to restrain the commission of an alleged nuisance which consisted in the deposit in the waters of said river of large quantities of refuse matter consisting of sawdust and other deleterious substances, the effect of which was to pollute said stream and the waters thereof and render the same unfit for use and to kill and destroy the fish therein. The trial court granted the injunction and this court affirmed its action, and in so doing rejected all of the contentions made by appellant herein upon this point. Appellant insists that the decision rested upon the circumstance that the alleged nuisance there complained of was a nuisance *per se* in that it polluted the waters and rendered them unfit for use. A careful reading of that opinion makes it clear that this is not so. That decision was rested not upon the circumstances that the pollution of the waters created a condition which was ''injurious to health'' or ''offensive to the senses,'' but upon the fact that it was an invasion of the *property rights* which were held by the state in trust for the people of the state. In other words, it was ''an obstruction to the free use of property.'' The court there said: ''The first point made against the complaint is that the facts alleged do not constitute a public nuisance within the definition of our code. But this objection would seem to overlook the most material feature of the complaint. It is alleged that the acts of defendant have the effect of polluting and poisoning the waters of the river, *and thereby killing and destroying the fish therein.* Anything which is '*an obstruction to the free*

*use of property* so as to interfere with the comfortable en-
joyment of life or property by an entire community or
neighborhood, or any considerable number of persons,' is
a public nuisance. (Pen. Code, sec. 370; Civ. Code, secs.
3479, 3480.)   The fish within our waters constitute the most
important constituent of *that species of property* commonly
designated as wild game, *the general right and ownership
of which is in the people of the state* (*Ex parte Maier,* 103
Cal. 476, 483 [42 Am. St. Rep. 129, 37 Pac. 402]), as in
England it was in the king; and the right and power to
protect and preserve such property for the common use and
benefit is one of the recognized prerogatives of the sovereign,
coming to us from the common law, and preserved and ex-
pressly provided for by the statutes of this and every other
state of the Union.   The complaint shows that by the repeated
and continuing acts of defendant *this public property right*
is being and will continue to be greatly interfered with and
impaired; and that *such acts constitute a nuisance,* both un-
der our statute and at common law, is not open to serious
question.   (*People* v. *Elk River etc. Co.,* 107 Cal. 219 [48
Am. St. Rep. 121, 40 Pac. 486].)''   The court there quoted
with approval from *State* v. *Roberts,* 59 N. H. 256, 484
[47 Am. Rep. 199], as follows: "It is a well-established
principle that every person shall so use and enjoy *his own*
*property,* however absolute and unqualified his title, that
his use of it shall not be injurious to the equal enjoyment of
others having an equal right to the enjoyment of *their prop-
erty,* nor injurious to the *rights* of the *public.*   Hence, while
the riparian owner has the *exclusive right of fishery* upon his
own land, he must so exercise *that right* as not to injure
others in the enjoyment of a *similar right* upon their lands
upon the stream above or below."   And, in summing up its
conclusion, the court said: "The mere fact, then, that the
interference or obstruction complained of may in fact be in
a stream where the right of fishery is exclusively in private
riparian owners, does not make the acts here complained of
any less an invasion of the public right nor prevent the
state from protecting *its general interest in the property.*"
It is thus made plain that the basis of equitable interposition
in that case was the threatened injury to the property rights
of the people which are held in trust by the state for the
people.   Appellant suggests that the court there rested its

action upon the circumstance that the act there complained of "unlawfully obstructed the free use" of the Truckee River, but the court in its opinion expressly recognized that the case did not come within that definition of a nuisance for the reason that the Truckee River was not a navigable stream.

Appellant argues that the injunction should not issue herein for the reason that there is an adequate remedy at law. It refers in this connection to the power of the commission after a hearing to suspend for a period not exceeding ninety days the license of a packer found guilty of violating its permit. It asserts that this power in conjunction with the provisions of another statute (Stats. 1917, p. 1275), making it a misdemeanor to engage in the business of packing fish without first procuring a license therefor, furnishes a complete and adequate remedy at law. Appellant does not believe that the act providing for the suspension of a license because of the violation of a permit is constitutional or valid, but says: "However, it is not necessary, for the consideration and determination of the pending controversy, to discuss and determine whether this statutory provision is constitutional. That the law provides a speedy, ample and effective remedy for committing the offense charged in the operation of a reduction plant is obvious." If the remedy thus afforded is unconstitutional and therefore nugatory, we cannot quite see how it can be adequate, but for the purposes hereof we shall assume the validity of the statute and the power of the commission thereunder to revoke appellant's license.

[6] The question whether or not a given remedy at law is adequate is in the first instance a question of fact for the trial court and even where the evidence is unconflicting, if opposing inferences may be reasonably drawn therefrom, it still remains a question of fact in the first instance. The finding and conclusion of the trial court thereon will not be disturbed upon appeal, therefore, unless it is shown that the evidence is legally insufficient to support the same. The power of the commission to suspend a license can be exercised only after a hearing had upon written charges filed with the commission and served upon the alleged offender and upon due notice to the latter. The commission is given the right to issue subpoenas, but has no power to compel obedience·

to them. If, when the date which has been fixed for the hearing arrives, a witness who has been subpoenaed fails to appear, or appears and refuses to testify, the commission may then file a petition in the superior court setting up these facts, whereupon the latter may issue an order to show cause and have the same served upon the delinquent witness, requiring him to appear before the *court*, at a day fixed, to show cause why he should not appear or testify before the commission. Upon such hearing if it shall appear to the court that said subpoena was regularly issued by the commission the court shall thereupon enter an order that the witness appear before the *commission* at a time and place to be fixed by the *court*. It is thus apparent that a resourceful defendant may delay the proceedings of a hearing before the commission indefinitely. In the meantime the defendant may continue the wasteful destruction of fish at the rate of millions per month. If it is finally found guilty by the commission, the utmost penalty which the latter can impose is a suspension of license for a period not exceeding ninety days. In the meantime the fishing season for that particular year will probably have ended, and the ninety days' suspension of license would be inconsequential. If not, as suggested by counsel for the commission, the defendant may then lease his plant to some other person who may continue the operation thereof. [7] We are satisfied that the conclusion of the trial judge that the remedy thus afforded is not adequate cannot and should not be disturbed by us. We do not understand appellant to seriously contend that the criminal prosecution of defendant upon a misdemeanor charge for violating the terms of its permit would afford an adequate remedy herein.

It is suggested that the court in issuing this injunction was assuming to exercise the police power of the state and in so doing invaded the exclusive province of the legislature. It is said that if the court had the authority to issue this injunction under the circumstances existing it might have done so equally in the absence of any act of the legislature regulating the taking and use of fish or limiting the quantity thereof to be used for reduction purposes. In other words, that it could have established by judicial fiat a rule that no more than twenty-five per cent of the sardines may be so used, and that in so doing it would have been, in effect,

enacting a statutory rule and so usurping the province of the legislature. This involves an erroneous conception of the nature and effect of the court's action. In the first place, the court acted only upon the facts of the particular case and with reference only to the parties thereto. [8] The decree issued by it did not have, and could not have had, the binding effect of law as a rule governing the action of anyone other than the parties to that action. The legislature in enacting the regulations here involved was exercising the police power of the state. The effect of those regulations was to make the use of fish for reduction purposes in excess of the limits there prescribed both wrongful and unlawful, but the court in the action herein was not at all concerned with the *unlawfulness* of those acts but only with their *wrongfulness* as an invasion of the *property rights* of the people. Having determined that the acts complained of constituted a wrongful invasion of those property rights and having further determined that the threatened continuance thereof would work irreparable injury for which there was no adequate remedy at law, there was a complete foundation for equitable interposition and equitable relief.

The order appealed from is affirmed.

Richards, J., Seawell, J., Lawlor, J., Lennon, J., and Shenk, J., concurred.