[Civ. No. 6218.  Third Appellate District.—January 31, 1940.]

PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Respondent, v. E. C. MOORE et al., Appellants.

Earl Warren, Attorney-General, and J. Walter French, Deputy Attorney-General, for Appellants.

Thomas J. Straub and John C. Wood for Respondent.

THE COURT.—This action was brought by respondent to enjoin appellants from proceeding in any manner to enforce the installation of a fish screen without first paying respondent one-half of the estimated cost thereof. A decree was entered granting the injunction, and defendants have appealed.

The respondent is a private domestic corporation engaged in producing, generating, transmitting, delivering, or furnishing electricity for light, heat or power. For this purpose it owns a reservoir known as Fuller Lake used for the temporary storage of waters which are thereafter released into a canal or conduit extending from Fuller Lake to the forebay and penstock of respondent's Spaulding No. 3 Power House. These waters are then used in this and other power houses for the generation of electricity for light, heat or power purposes.

On or about October 22, 1936, the appellants ordered the respondent to construct and install a fish screen in Fuller Lake in front of the outlet or gate through which the water flows from Fuller Lake to the forebay and penstock of Spaulding No. 3 Power House.

The appellants furnished the respondent with drawings and specifications showing the kind and nature of the fish screen ordered to be installed, and the estimated cost of constructing the same. The respondent was ordered to construct and install this fish screen completely at its own expense and the appellants did not tender nor pay to the respondent one-half of the estimated cost thereof.

The action and conduct of the appellants as aforesaid was governed by, pursuant to, and in compliance with the statutory provisions of this State as set forth in the following sections of the Fish and Game Code of the State of California, to wit:

"535. The Commission shall examine all conduits and order the owners to install, and it is the duty of the owners of a conduit to install a screen on any conduit when, in

the opinion of the Commission, such a screen is necessary to prevent fish from passing into the conduit. Except as provided in Sections 536.9, 537 and 538, one-half of the expense of constructing or installing a screen shall be paid by the owner of a conduit, and one-half by the Commission.

"536. The order to install a screen must be in writing, and specify the type, size, mesh, material and location of the screen, the time within which the screen must be installed, and must include an estimate of the expense of installing the screen.

"536.5. When an order is made to install a screen the Commission must pay the owner upon whom the order is served one-half of the estimated expense of the construction or installation of the screen.

"536.6. If the expense of constructing or installing a screen exceeds the estimated expense, the Commission, must upon written notification by the owner of the conduit, inspect the screen, and pay to the owner one-half of the amount estimated to be necessary to complete the construction or installation of the screen.

"536.9. The Commission shall not pay one-half of the expense of the construction and installation of the screen as provided in Sections 535, 536.5, and 536.6 to any person, firm, or private corporation engaged in producing, generating, transmitting, delivering, or furnishing electricity for light, heat or power. If this section is for any reason held to be unconstitutional, such decision shall not affect the validity of Sections 535, 536.5 or 536.6, and the legislature hereby declares that the persons, firms or private corporations mentioned in this section shall be subject to the provisions of Sections 535, 536.5 and 536.6."

The trial court held that the foregoing section (536.9) of the Fish and Game Code was unconstitutional. Appellants seek to uphold the foregoing enactment upon the following grounds: (1) It operates uniformly upon all persons, firms and corporations engaged in the business of generating, transmitting and delivering electricity for light, heat and power; and (2) That the legislature has the right to make classifications and apply different rules to different classifications. The constitutional provisions alleged to have been violated by such enactment are as follows:

"All laws of a general nature shall have a uniform operation. (Constitution of California, art. I, sec. 11.)

"Nor shall any citizen, or class of citizens be granted privileges or immunities which, upon the same terms shall not be granted to all citizens." (Constitution of California, art. I, sec. 21.)

The whole matter revolves around the right of the legislature to place "any person, firm or private corporation engaged in producing, generating, transmitting, delivering or furnishing electricity for light, heat or power" in a class where they must bear the entire cost of installing fish screens, while all others are placed in a class where they must pay only one-half of such cost.

The general rule governing the interpretation of statutes is thus expressed in 11 American Jurisprudence, page 725, section 97:

"It is an elementary principle that where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which would uphold it. It is the duty of courts to adopt a construction of a statute that will bring it into harmony with the Constitution, if its language will permit. The duty of the courts so to construe a statute as to save its constitutionality when it is reasonably susceptible of two constructions includes the duty of adopting a construction that will not subject it to a succession of doubts as to its constitutionality, for it is well settled that a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubt upon that score. Thus, if the proper construction of a statute is doubtful, the doubt must be resolved in favor of the law."

The right of the legislature to classify and the approach which the courts should take in considering an attack upon the constitutionality of a statute, is well stated in the case of *Martin* v. *Superior Court*, 194 Cal. 93–100, 101 [227 Pac. 762]:

"A law is not special legislation merely because it does not apply to all persons. It is a settled principle of constitutional law that the legislature may classify for the purpose of meeting different conditions, naturally requiring different

legislation, in order that legislation may be adapted to the needs of the people. If the law is to bear equally upon all persons, the legislature must classify whenever there exists a reason which may rationally be held to justify a diversity of legislation. In other words, different persons, different localities, and different governmental organizations and agencies may justly be found by the legislature to stand in different relations to the law, and if the same law were, in such a situation, to be applied to all alike, it would not bear equally upon each of them. (*Darcy* v. *Mayor etc. of San Jose,* 104 Cal. 642 [38 Pac. 500]; *In re Sumida,* 177 Cal. 388 [170 Pac. 823].)

"The classification, however, must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic, or constitutional, which suggests a reason for, and justifies the particular legislation. That is to say, not only must the class itself be germane to the purpose of the law but the individual components of the class must be characterized by some substantial qualities or attributes which suggest the need for, and the propriety of the legislation. Subject to these limitations a law is general despite the fact that it operates only upon a class of individuals or things, if it applies equally to all persons or things within the class to which it is addressed. . . .

"The power to thus classify necessarily carries with it a wide discretion in the exercise thereof. The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act, and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason."

The power of the state to generally enact such legislation is set forth in 11 Ruling Case Law, page 1041, section 28:

"The State has the power to regulate fisheries in public and private streams, and to adopt appropriate means for the preservation of edible fish for the benefit of the people; and it is not only the right of the State, but it is also its duty, to preserve for the benefit of the general public the fish in

its waters, in their migrations and in their breeding places, from destruction or undue reduction in numbers through the caprice, improvidence or greed of the riparian proprietors, as well as of trespassers. The State may permit or prohibit the catching of fish within its waters; and if it allows the catching it may regulate this by the imposition of such conditions, restriction and limitations as it deems needful or proper. The power of the State is based upon the circumstance that the fish in the waters of the State as well as the game in its forests belong to the people in their sovereign capacity, and are not the subject of private ownership except in so far as the people may elect that they shall be.''

Is the classification thus made ''based upon some distinction, natural or intrinsic, or constitutional, which suggests a reason for, and justifies this legislation'', bearing in mind that ''unless such classification is palpably arbitrary in its nature, and neither founded upon nor supported by reason'' it must be upheld? We believe that the enactment is not vulnerable to the attack made. The legislature was justified in placing a greater burden upon respondent than upon other water-diverters. It is a matter of common knowledge that when fish once enter the penstock to a powerhouse it is absolutely impossible for such fish to ever thereafter return to the water from which they were originally diverted. Furthermore, after entering the penstock the fish are either immediately killed by the pressure or they are killed by the machinery through which the water flows in the power-plant itself; whereas, on the other hand, when fish once enter the conduit diverting water for natural uses it is possible for such fish to thereafter return to the water from which they were originally diverted. Furthermore, after entering such a conduit the fish are neither killed by any pressure nor are they affected in any way by the natural purposes for which the water is thereafter used.

It appears from the reports of the State Fish and Game Commission that this state annually expends many thousands of dollars in the propagation of fish and the planting of such fish in its waters. We can take judicial knowledge of the fact that the sole source of funds expended by the commission is money received from the sale of licenses to take fish and game. The funds, if the commission were required to meet one-half of the costs of the proposed screen, would not be paid

out of the general fund of the state, but would be paid from the funds of the commission. A screen of this character would prevent fish, which were planted by the state, from being destroyed.

It is not unreasonable to require those diverters who destroy the greater amount of fish (including many planted by the state), to contribute more than others to the installation of a device which will eliminate such destruction. Neither is it unreasonable to assume that the legislature was motivated by such considerations when it passed this statute. Recognizing the wide discretion entrusted to the legislature in such matters, we cannot say that the classification made bears no relation to the inherent purpose of the law—to conserve and protect the fish life of this state for the common good of its citizens. It was a proper exercise of police power, directed toward the preservation not only of fish naturally in the streams and lakes, but also of fish propagated and planted by the state.

We have examined the authorities cited by both parties, but do not deem it necessary to discuss them in detail. The legal principles involved are not in dispute. They are fairly stated in the Martin case, *supra*. Other decisions mentioned in the briefs present various classifications made by the legislature of this and other states, and of the Congress of the United States. None of them deals with the particular classification here made. ■ The question as to whether a classification of this character is arbitrary, or whether it is reasonably related to the inherent purpose of the law, must be determined from the facts and circumstances surrounding the enactment and its subject matter, always bearing in mind "that the constitutionality of a legislative enactment will be presumed, and any doubt respecting its constitutionality will be resolved in its favor." (*Rainey* v. *Michel,* 6 Cal. (2d) 259–272 [57 Pac. (2d) 932, 105 A. L. R. 148].)

The decree is reversed, and the trial court directed to enter findings and judgment in accordance with this opinion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 29, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1940.