[No. A051997. First Dist., Div. Five. Sept. 27, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
SCOTT PATRICK BRADY et al., Defendants and Respondents.

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Appellant.

Rodney R. Jones and Paul Couenhoven, under appointments by the Court of Appeal, for Defendants and Respondents.

OPINION

LOW, P. J.—We hold that the illegal taking and killing of abalone from coastal waters may not be punished as grand theft under Penal Code section 487, subdivision 1, although it is punishable under several provisions of the Fish and Game Code.[1] We affirm the order setting aside count 2.

Defendants were observed by fish and game officers illegally taking 196 abalone from the coastal waters off the Mendocino Coast, an area where commercial fishing for abalone is prohibited. When confronted by the officers, defendants lied about their activities and insisted they caught and consumed only a single abalone, outside the prohibited zone. They refused to declare their catch when demanded by the officers. The illegal catch was discovered in a hidden compartment aboard the defendants' boat, well concealed beneath the carpeted floor between the cabin and the fuel tank. Lieutenant Morse confiscated the shellfish and sold 175 of the illegal catch to a fish broker for $15 each, for a total of $2,625.

Defendants moved to set aside count 2, charging grand theft, on the ground that their activities did not constitute theft of personal property. In granting defendants' Penal Code section 995 motion, the trial court concluded, "[A]s the law stands in the State of California at the present time abalone are farae [sic] naturae, they are not owned by anybody until they are harvested." In denying the People's later motion for reconsideration, the trial

---

[1] Defendants were also charged with (1) conspiracy to commit a crime, a felony (Pen. Code, § 182, subd. (a)(1)), (2) violation of Fish and Game Code section 8305 (unlawfully taking abalone for commercial purposes from a closed district), (3) section 2000 (unlawful taking of abalone), (4) section 2002 (unlawful possession of abalone), (5) section 8301 (bringing abalone ashore not in their shell), (6) section 2012 (refusal to exhibit the abalone taken, upon demand), (7) failure to display registration number (Cal. Code Regs., tit. 14, § 120.7, subd. (i)), (8) and taking/possessing abalone while urchins are taken (Cal. Code Regs., tit. 14, § 120.7, subd. (j)(1)).

court determined that "[w]ild animals, birds and fish are not the subjects of larceny until caught or killed." The court also concluded, "The Legislature has proscribed the 'taking' of abalone except as permitted by the Fish and Game Code and administrative regulations promulgated thereunder. . . . And it has imposed misdemeanor penalties for violations of these laws. . . . In so doing, it has not manifested any intent to treat illegal takings of fish or game as larceny and, hence, subject to the penalties imposed by Penal Code section 487."

As used here, the crime of theft, i.e., larceny, is defined as the taking and carrying away of the personal property of another, with the intent to deprive the owner of the property permanently. (Pen. Code, § 484; *People* v. *Earle* (1963) 222 Cal.App.2d 476, 477-478 [35 Cal.Rptr. 265]; Perkins & Boyce, Criminal Law (3d ed. 1982) ch. 4, § 1, p. 292.) In most cases the crime becomes grand theft when the property taken exceeds $400. In certain circumstances the unlawful taking of lesser valued property is grand theft. Penal Code section 487, subdivision 1 provides: "When the money, labor or real or personal property taken is of a value exceeding four hundred dollars ($400); . . . provided, further, that when fish, shellfish, mollusks, crustaceans, kelp, algae, or other aquacultural products are taken from a commercial or research operation which is producing that product, of a value exceeding one hundred dollars ($100) . . . ."

■ The People contend that the abalone taken here fall under the general definition of personal property, and since their value exceeded $400, defendants may be charged with grand theft. They argue that the state owns the abalone found in its coastal waters and their unlawful taking is theft just as in any felonious taking of a private individual's personal property.

The question is whether the abalone, illegally taken from the state's coastal waters, can be considered "personal property" of the state within the meaning of the statute.

## I

### A

■ Larceny is an offense against a person's proprietary or possessory interest in property. California has followed the long-accepted rule that an individual has no personal property right in wild animals or fish unless captured, tamed or otherwise reduced to possession. (Civ. Code, § 656; *Takahashi* v. *Fish and Game Com.* (1947) 30 Cal.2d 719, 728-729 [185 P.2d 805], revd. on other grounds in 334 U.S. 410, 421 [92 L.Ed. 1478, 1488, 68 S.Ct. 1138]; *Ex parte Maier* (1894) 103 Cal. 476, 483 [37 P. 402]; *Ex parte*

*Bailey* (1909) 155 Cal. 472, 475 [101 P. 441]; *Douglas* v. *Seacoast Products, Inc.* (1977) 431 U.S. 265, 284 [52 L.Ed.2d 304, 319-320, 97 S.Ct. 1740].) At common law and before, it was not larceny to take or kill a wild animal since, in their natural state, they are owned by no one. (2 Jones' Blackstone (1976) pp. 2446-2447.) Rather, wild animals were considered "owned" by the government in its sovereign capacity as trustee for the benefit of its citizens. (*Ex parte Maier, supra,* at p. 483; *Takahashi, supra,* at pp. 728-729.)

The term "ownership" should not be taken to imply that the state has title to these and other wild animals. "A State does not stand in the same position as the owner of a private game preserve and it is pure fantasy to talk of 'owning' wild fish, birds, or animals. Neither the States nor the Federal Government, any more than a hopeful fisherman or hunter, has title to these creatures until they are reduced to possession by skillful capture. [Citations.] The 'ownership' language . . . must be understood as no more than a 19th-century legal fiction expressing 'the importance to its people that a State have power to preserve and regulate the exploitation of an important resource.' [Citations.] Under modern analysis, the question is simply whether the State has exercised its police power in conformity with the federal laws and Constitution." (*Douglas* v. *Seacoast Products, Inc., supra,* 431 U.S. at pp. 284-285 [52 L.Ed.2d at pp. 319-320]; accord, *Hughes* v. *Oklahoma* (1979) 441 U.S. 322, 334-335 [60 L.Ed.2d 250, 260-261, 99 S.Ct. 1727].)

■ An individual's right to hunt and fish is a qualified right subject to the authority of the Legislature to impose conditions it deems necessary for the public good. (*People* v. *Monterey Fish Products Co.* (1925) 195 Cal. 548, 563 [234 P. 398, 38 A.L.R. 1186]; *People* v. *Truckee Lumber Co.* (1897) 116 Cal. 397, 400-402 [48 P. 374].)

■ In upholding the state's authority to criminalize the sale of deer meat whether caught within the state or outside its borders, the court in *Ex parte Maier, supra,* 103 Cal. 476, held, "The wild game within a state belongs to the people in their collective, sovereign capacity; it is not the subject of private ownership, except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or any traffic or commerce in it, if deemed necessary for its protection or preservation, or the public good." (*Id.,* at p. 483; accord, *Takahashi* v. *Fish and Game Com., supra,* 30 Cal.2d at pp. 728-729.)

This is the contemporary view. (See *United States* v. *Long Cove Seafood, Inc.* (2d Cir. 1978) 582 F.2d 159, 163-164; *United States* v. *Tomlinson* (D.Wyo. 1983) 574 F.Supp. 1531, 1535; 2 LaFave & Scott, Substantive

Crim. Law (1986) § 8.4, p. 349; Perkins & Boyce, Criminal Law, *op. cit. supra*, ch. 4, § 1, pp. 292-295.) Civil Code section 656 recognizes the limited ownership rights in wild animals. That section reads: "Animals wild by nature are the subjects of ownership, while living, only when on the land of the person claiming them, or when tamed, or taken and held in possession, or disabled and immediately pursued."

 We conclude that like other wild game, the abalone caught in the state's coastal waters belong to the people of the State of California in their collective, sovereign capacity. No individual property right exists in these shellfish. Rather, the state acts as trustee to protect and regulate them for the common good. In this representative capacity the state does not have a proprietary interest in these abalone that can be equated with the personal property of the state. (Cf. *State* v. *Lee* (Fla. 1949) 41 So.2d 662 [a domesticated pet deer, owned by Fla. Game & Fresh Water Fish Com., is the subject of larceny].) We conclude these 196 abalone cannot be construed to be the "property of another" within the meaning of sections 484 and 487 of the Penal Code.

### B

An examination of the language of the theft statute supports this conclusion. Penal Code section 487, subdivision 1 makes the taking of certain items the subject of larceny, which were not considered to be larceny under the common law. At common law, the stealing of one's labor or services, real property, crops (if severed and carried away immediately), evidence of debt or other written instruments and even the family dog were not crimes of larceny. (Perkins & Boyce, Criminal Law, *op. cit. supra*, ch. 4, § 1, p. 292 et seq.; 2 LaFave & Scott, Substantive Crim. Law, *op. cit. supra*, § 8.4, pp. 349-351.) But this has been changed by statute. Penal Code section 487, subdivision 1 now makes it a crime to take labor, real property and crops, of a particular value. Penal Code section 495 makes it larceny to sever or take a fixture from real property. Personal property subject to theft now includes written instruments (Pen. Code, §§ 492, 494), and tickets for public conveyances (Pen. Code, § 493), neither of which were the subject of larceny at common law. Further, the Legislature has expressly made dog stealing a theft offense. (Pen. Code, § 491; also *People* v. *Sadowski* (1984) 155 Cal.App.3d 332, 335-336 [202 Cal.Rptr. 201, 55 A.L.R.4th 1075] [cat stealing is larceny].)

Having chosen to change the common law and criminalize the taking of some property and animals, the Legislature's failure to punish, as theft, the taking of wild animals from their natural habitat, reflects the legislative

intent to continue the common law rule that the unlawful taking or killing of animals in the wild is not larceny.

The soundness of this interpretation is confirmed when one considers the statutory language reducing the monetary limit for grand theft to $100 for "fish, shellfish . . . taken from a commercial or research operation which is producing that product . . . ." (Pen. Code, § 487, subd. 1.) This section criminalizes the taking of shellfish which has been reduced to the victim's private possession. The stealing of fish confined in a fishery or fish farm was larceny at common law. (2 Jones' Blackstone, *op. cit. supra,* at pp. 2446-2447.) In amending this statute in 1982, the Legislature had an opportunity to make the unlawful taking of abalone from public waters the subject of theft, in derogation of the common law, but this was not done. A review of the legislative history to Penal Code section 487 reveals that in 1982 the Legislature added the language covering fish and other aquacultural products taken from "a commercial or research operation which is producing that product." (Stats. 1982, ch. 375, § 1, p. 1693; Sen. Amend. to Assem. Bill No. 1389 (1981-1982 Reg. Sess.) Feb. 25, 1982.) At that time, there was no attempt to define the unlawful taking of shellfish from public waters as grand theft.

To the contrary. In a report from the Senate Judiciary Committee, a question was raised whether it was the author's (Assemblyman Thurman) intent to make such a taking grand theft: "According to an employee of the Department of Fish and Game, Wildlife Protection Branch, the unlawful taking of fish that are undersized, out of season, or over the allowed limits would constitute theft. *However, no court has ruled on this interpretation.* (Italics added.) [¶] Is This the Author's Intent? Should This Provision Be Narrowed to Apply Only to Marine Products That Are Taken From a Commercial Operation That Is Producing That Product?" (See Sen. Com. on Judiciary, Rep. on Assem. Bill No. 1389, Appen. to Assem. J. (1981-1982 Reg. Sess.).)

■ The reports of legislative committees are part of a statute's legislative history and may "provide some indication of how the measure was understood at the time by those who voted to enact it." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) ■ These statements indicate the Legislature was aware of the precise issue that is now before us and decided not to expand the scope of the theft statute. We may reasonably conclude that if the Legislature intended to depart from the common law, they would have discussed such a step at some point during the bill's progress through the legislative committees. (See *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 817, fn. 10 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)

## II

The People rely on language in *Takahashi* v. *Fish and Game Com.*, *supra*, which declared the state to be "the owner of the fish in coastal waters and [it] may regulate the taking of them for private use." (30 Cal.2d at p. 728.) The *Takahashi* court described these ownership rights as " 'the same as any other proprietor [who] owns property . . . . The power to make such disposition of the fish arises out of and is incidental to the ownership of the property.' " (*Id.*, at p. 729.) Similar language is found in *People* v. *Monterey Fish Products Co.*, *supra*, which stated: "The title to and property in the fish within the waters of the state are vested in the [S]tate of California and held by it in trust for the people of the state." (195 Cal. at p. 563.)

Neither of these cases dealt with the question whether the taking of fish in public waters is theft. Rather, these cases restated the long-accepted principle that the state has comprehensive regulatory powers to protect and preserve these aquatic resources for the benefit of the public. In *Takahashi*, *supra*, later reversed in *Takahashi* v. *Fish Comm'n.* (1948) 334 U.S. 410 [92 L.Ed. 1478, 68 S.Ct. 1138], the Supreme Court concluded that the state's broad powers over the regulation of the taking, possession, sale or transportation of its fish and game empowers it to deny aliens, ineligible for citizenship, the privilege of hunting or fishing. (30 Cal.2d at pp. 730-731.) In *Monterey Fish Products Co.*, *supra*, the Supreme Court ruled the state may enjoin defendants from using fish fit for human consumption to make fertilizer, pursuant to its power to prevent waste and deterioration of fish. (195 Cal. at p. 554.)

As discussed earlier, the language in these cases indicating the state "owns" the fish for regulatory reasons cannot be stretched to mean that the fish and wild animals are the personal property of the state, like the law books in the court's library or the desks in our state offices. This language merely describes the comprehensive rights of the state to take action in the name of the people of this state, including the absolute prohibition of fishing and hunting to preserve and protect these natural resources.

The law is not without power to severely punish this reprehensible act. As the Attorney General and both defense counsel on appeal stated, the defendants could be and were charged with the felony of conspiracy to violate the Fish and Game laws (Pen. Code, § 182). In addition, Fish and Game Code section 12000 makes violation of any provision a misdemeanor. Section 12009 provides a maximum punishment for violations involving abalone, including a fine of $5,000, imprisonment in the county jail for a period not to exceed one year, the revocation of any wholesale fish dealer's license, or any combination of these penalties. In 1990 the Legislature added section

8312 to the Fish and Game Code, which increased the penalties for any person unlawfully taking 36 or more abalone in an area closed to commercial fishing to include (1) a fine of 5 times the market value of the abalone taken or $10,000, whichever is greater, (2) permanent revocation of the commercial fishing license, (3) forfeiture of the vessel, and (4) to include section 12009, which also imposes a term in the county jail not to exceed one year. (Stats. 1990, ch. 1288, §§ 23, 26.)

Defendants are charged with plundering the fragile sea coast. If true, they will have depleted vital sea life necessary to maintain the delicate balance of our ecosystem. We sympathize with the People's desire to punish the wanton looting of this limited resource, at least as severely as the altering of a train ticket or the stealing of a livestock carcass (Pen. Code, §§ 481, 487a). Under its regulatory powers, the Legislature has the authority to increase the imprisonment for illegal taking of abalone. It may be that the Legislature will find it necessary to amend Penal Code section 487 to include the poaching of fish and wild life from public areas. But under the current statutory scheme, they have not done so.

The order setting aside the allegation of grand theft contained in count 2 of the information is affirmed.

King, J., and Haning, J., concurred.