TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 92-1111 |
| of | : | |
| | : | MAY 4, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE DAN McCORQUODALE, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

Is Fish and Game Code section 7147 constitutional in requiring owners and operators of commercial passenger fishing boats to ensure that all persons fishing from their boats are in possession of a valid fishing license?

CONCLUSION

Fish and Game Code section 7147 is constitutional in requiring owners and operators of commercial passenger fishing boats to ensure that all persons fishing from their boats are in possession of a valid fishing license.

ANALYSIS

Fish and Game Code section 7147,[1] which was enacted in 1992 (Stats. 1992, ch. 701, § 4), provides as follows:

"The owner or operator of a boat or vessel licensed pursuant to Section 7920 shall not permit any person to fish from that boat or vessel unless that person has, in his or her possession, a valid sportfishing license, sport ocean fishing license, or sport ocean fin fishing license and any required license stamp."

_____

1. Unless otherwise specified all section references herein are to the Fish and Game Code.

The owner or operator to which section 7147 applies is indicated in section 7920, which provides in part as follows: "The owner of any boat or vessel who, for profit, permits any person to fish therefrom, shall procure a commercial passenger fishing boat license."

We are asked to determine whether section 7147 is constitutional in requiring boat and vessel owners and operators to ensure that their passengers are in possession of a valid fishing license. Three questions arise in this regard: does the statute improperly require the owners and operators to act in the capacity of peace officers; does it unduly interfere with the efficient operation of commercial passenger fishing boats; or does it create other compliance and enforcement difficulties because it is vague and ambiguous? For the reasons which follow, we find that the statute in question is a lawful exercise of the state's police power and does not suffer from the asserted constitutional infirmities.

We begin by noting that in the same legislation by which section 7147 was enacted, the Legislature enacted section 710.7 as follows:

"(a) The Legislature finds and declares all of the following:

"(1) The department continues to face serious funding instability due to revenue declines from traditional user fees and taxes and the addition of new program responsibilities.

"(2) Historically, the commercial fishing industry has funded much of the department's marine fisheries activities.

"(3) As the state's population grows and land uses change through urban development, fish and wildlife resources continue to be depleted, necessitating a significant portion of the department's activities to be directed toward protecting fish and wildlife resources for the benefit of the general public.

"(b) It is the intent of the Legislature to extend the current user-based funding system by allocating a portion of the marine resource protection costs to those who use and benefit from wise management of the marine fishery resources.

"(c) It is the Legislature's intent that . . . the department shall cooperate with the Legislature and the commercial fishing industry to identify and propose new alternative sources of revenue to fund the department's necessary marine resource management and protection responsibilities."

Given the foregoing statement of legislative intent, it is evident that the Legislature, by requiring the owner or operator of a commercial passenger boat to ensure that all fishing passengers are in possession of a valid and appropriate fishing license, sought to strengthen the user-based funding system for the protection of the state's fish resources. We proceed to analyze the question presented in light of this legislative purpose.

The enactment of section 7147 represents an exercise of the state's police power as part of its authority to protect and preserve fish and game for the public's use and benefit. (See *People* v. *Stafford Packing Co.* (1924) 193 Cal. 719, 730; *People* v. *Marine Products Co.* (1947) 77 Cal.App.2d Supp. 929, 934.) Since the state is the owner of its fisheries for the benefit of its citizens, the Legislature has the right to permit persons to take fish on such terms and conditions as it may impose in accordance with the state's duty to preserve the fishery resource for the general public. (*People* v. *Brady* (1991) 234 Cal.App.3d 954, 958 [individual's right to hunt and fish is a

qualified right subject to the authority of the Legislature to impose conditions it deems necessary for the public good]; *Pacific Gas & Electric Co.* v. *Moore* (1940) 37 Cal.App.2d 91, 96 [the state may permit or prohibit the catching of fish within its waters; fishing may be regulated by the imposition of such conditions, restrictions, and limitations as the state deems needful or proper].)

The presumption of validity which attaches to a legislative body's action in the exercise of the police power is particularly strong in connection with the state's conservation of its fisheries. (See *Young* v. *Department of Fish & Game* (1981) 124 Cal.App.3d 257, 280; *People* v. *K. Sakai Co.* (1976) 56 Cal.App.3d 531, 536.)

Here, in the interest of promoting its stewardship of the state's fisheries, the Legislature has imposed an additional condition on the conduct of the business of operating a commercial passenger fishing boat.[2/] The owners and operators of such boats and vessels purposefully facilitate and directly profit from the activity of sport fishing. They are therefore among "those who use and benefit from wise management of the marine fishery resources" (§ 710.7) and, as such, fall within the ambit of those who may be expected to bear the burdens of the legislative act of which section 7147 is a part.

Because of their direct connection with the activity of sport fishermen, and as they are uniquely situated for serving as a sport fishing license checkpoint, the owners and operators of commercial passenger fishing boats may reasonably be compelled to help ensure that their passengers are licensed for the privilege of taking fish from the ocean waters of the state. Due to the reasonable relationship between the statute and its object of conserving the state's fisheries by reinforcing the user-based funding system, the affected owners and operators may not successfully attack the validity of the statute merely because their compliance may strike them as being awkward or unnecessary.[3/]

Neither do we view section 7147 as presenting problems of uncertainty that would undermine its constitutionality. Only certain aspects of its application, such as whether it allows fishing from the boat by minors who are not normally required to have a fishing license, might be deemed problematical. Even under the strict standard applicable to criminal statutes, such incidents of uncertainty in the application of section 7147 would not be fatal to its enactment. As stated by the Supreme Court in *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1201:

---

2. Various requirements are applicable to commercial passenger fishing boats. (See, e.g., §§ 7923 [requiring a true record of all fish taken and compliance with Fish and Game Commission regulations], 7924 [subjecting a commercial passenger fishing boat license to suspension or revocation for the selling or purchasing of fish taken in state waters under a sport fishing license].)

3. The situation presented here is similar to that faced by a liquor store owner or nightclub operator who must check the identification of youthful patrons to ensure that the persons are not below the legal age for consumption of alcoholic beverages. (See Bus. & Prof. Code, §§ 25658, 25659.) This has long been accepted as one of the necessary burdens of doing business in an area of commerce where the state has a strong interest.

Even in the extreme situation of a person without a sportfishing license not being dissuaded from boarding the fishing boat by its owner or operator, section 7147 does not call upon the owner or operator to act as a peace officer. Local law enforcement authorities may be appropriately summoned to deal with the matter.

". . . Many, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear. So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face. In order to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct . . . a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that `the law is impermissibly vague *in all its applications*.' [Citations.]"

Finally, we note that an administrative agency charged with implementing a statutory enactment may, in most instances, provide an authoritative construction resolving any uncertainty. (*Pennisi* v. *Department of Fish & Game* (1979) 97 Cal.App.3d 268, 277.)

We conclude, therefore, that in requiring owners and operators of commercial passenger fishing boats to ensure that all persons fishing from their boats are in possession of a valid fishing license, section 7147 is a proper exercise of the state's police power and is constitutional.

\* \* \* \* \*